## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILBERTO MELENDEZ** | : | |
| | : | |
| **Plaintiff,** | : | |
| **v.** | : | **3:14-CV-1894** |
| | : | **(JUDGE MARIANI)** |
| **HAPPY TRAILS AND RIDING** | : | |
| **CENTER, INC.** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On September 30, 2014, Plaintiff, Wilberto Melendez, filed a one count Complaint

with this Court against Defendant, Happy Trails and Riding Center, Inc.[1]  (Doc. 1).  The

Complaint alleges that Plaintiff suffered injury as a result of Defendant's negligence in its

operation of a business which rented horses and equipment to the public for recreational

horseback riding.  After the conclusion of fact discovery, Defendant filed a Motion for

Summary Judgment (Doc. 19) and supporting brief (Doc. 20) on October 29, 2015.  Plaintiff

filed a Brief in Opposition (Doc. 22) and Defendant filed a Reply.  (Doc. 23).  Oral argument

on the matter was held on April 4, 2016.

---

[1] Defendant points out that the business is owned and operated by Randolph Bennett, d/b/a
Happy Trails Stables, and was incorrectly pleaded as Happy Trails Riding Center, Inc.  For the purposes of
this motion, the error, if any, is immaterial and the opinion will refer to Defendant as "Defendant" or "Happy
Trails."

The motion is now ripe for decision. For the reasons set forth below the Court will deny Defendant's motion in its entirety.

## II. STATEMENT OF UNDISPUTED FACTS

In accordance with Local Rule 56.1, Defendant submitted a Statement of Material Facts in Support of its Motion for Summary Judgment, (Doc. 20), as to which it contends that there is no genuine dispute for trial. Plaintiff submitted a response, a Counter Statement of Facts, (Doc. 22), with the result being that the following facts have been admitted, except as specifically noted:

Plaintiff, Wilberto Melendez, went to Defendant's stable on May 31, 2014, for the purpose of going horseback riding. (Doc. 20, ¶¶ 1, 2). After his group arrived, Plaintiff went into the stable's office to register. (*Id.* at ¶ 5). Plaintiff was presented with a form (the "agreement"), which stated, in pertinent part:

AGREEMENT FOR PARTICIPATION AND\OR VOLUNTEERS [sic] RELEASE AND DISCHARGE, ACCEPTANCE OF RESPONSIBILITY AND ACKNOWLEDGE [sic] OF RISK:
IN CONDERATION [sic] FOR BEING PERMITTED TO UTILIZE THE FACILITIES AND EQUIPMENT OF HAPPY TRAILS RIDING STABLES AND TO ENGAGE IN HORSEBACK RIDING, AND ALL RELATED ACTIVITIES.

. . . .

1. I understand and acknowledge that the activity I am voluntarily engage [sic] in as a participant and/or [sic] bears certain know [sic] risk [sic] and unanticipated risks which could result in jury, [sic] death, illness, or disease, physical or mental, or damage to myself, to my property, or to spectators or other third parties. I understand and acknowledge those risk [sic] may result in personal claims against "HAPPY TRAILS STABLES" or claims against me by spectators or other third parties.

2

1. [sic] The nature of the activity itself, including the possible risks to you the rider.

A. The animal may be startled by unforeseen or unexpected noises from other animals, people, vehicles, activities and as a result you the rider may be hurt or injured should the animal react to said noises or activity, by running, bucking, rolling, or kicking, etc.

B. That you as the rider realizes [sic] that the animal is reacting to your physical instructions, conduct, and verbal instructions and commands, and therefore, the animal will respond in accordance with your reactions or commands. However, there are times when the animal may be confused or distracted during course [sic] of your instructions and/or commands.

C. You the rider understands [sic] that an animal may kick or bite you the rider, or you the pedestrian, and that other animals which may be on tour, could kick or bite you the rider and/or pedestrian.

D. You the rider are aware that physical conditions of the trails may cause injury or risk to you, should these physical conditions such as low tree limbs, bushes, or other type of natural growth come in contact with animal [sic] or yourself.

2. I hereby release and discharge Happy Trails Stables, instructors, trail guides, stable managers, employees, owners of the horses and related equipment and land utilized for Happy Trails Stables activities, hereinafter referred to as the "Released Parties," from any and all claims, demands, or cause of action that I, or any of my heirs, successors or assigns, [sic] may hereafter have for injuries and/or damages arising out of my participation in Happy Trails activities, including but not limited to, loses caused by negligence of the released parties.

3. I further agree that I, my heirs, successors, or assigns, [sic] will not sue or make claim against the Released Parties for damage or other loses sustained as a result of my participation in Happy Trails activities.

. . . .

4. I understand and acknowledge that Happy Trails activities have inherent dangers that no amount of cares, [sic] caution, instruction, or expertise can eliminate and I expressly and voluntarily assume all risk of personal injury or death sustained while participating in "Happy Trails Stables" activities weather [sic] or not caused by negligence of the Released Parties. . . .

3

. . . .

> 6. I hereby expressly recognize that this Agreement and Release of Liability is
> a contract pursuant to which I have released any and all claims against the
> Released Parties resulting from my participation in Happy Trails activities
> including any claims caused by negligence of the Released Parties. *I also*
> *assume the risk of the equine activities pursuant to the* [sic] *Pennsylvania law.*

(*Id.* at ¶¶ 5, 11; Doc. 20-7) (emphasis original). An employee of Happy Trails informed

Plaintiff that Plaintiff must sign the agreement in order to go horseback riding. (Doc. 20, ¶

5). Plaintiff signed the agreement. (*Id.* at ¶ 8). In addition to the agreement, there were

signs posted inside the office, outside the office, and by the stable which read "You assume

the risk of equine activities pursuant to Pennsylvania Law." (*See id.* at ¶¶ 12-15; Doc. 20-

8).

After completing the agreement, Plaintiff waited while a Happy Trails employee

saddled up a horse. (Doc. 20, ¶ 17). Plaintiff then mounted the horse and participated in a

guided group horseback ride for the next forty-five minutes without incident. (*Id.* at ¶¶ 19,

21). On several occasions during the ride, Plaintiff requested permission from the guide to

gallop the horse. (*Id.* at ¶¶ 22, 23). Plaintiff was told it was too dangerous to do on the trail.

(*Id.*). At the end of the ride, one of the guides brought Plaintiff away from the group so that

Plaintiff could canter the horse. (*Id.* at ¶ 26). Plaintiff then put the horse into a gallop and,

while rounding a turn, a stirrup broke and Plaintiff fell from the animal. (*Id.* at ¶¶ 27-29).

4

Plaintiff maintains that the stirrup Defendant provided him was faulty or defective and that this was the cause of his fall. (Doc. 22 at 1). Plaintiff further maintains that this fall resulted in fractured ribs and pneumothorax. (*Id.* at 3).

### III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, . . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support

the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should

be granted, "[t]he court need consider only the cited materials, but it may consider other

materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light

most favorable to the non-moving party, and where the non-moving party's evidence

contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW,*

*Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912,

113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380, 127

S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary

judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between
> the parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no *genuine* issue of
> *material* fact. When opposing parties tell two different stories, one of which is
> blatantly contradicted by the record, so that no reasonable jury could believe
> it, a court should not adopt that version of the facts for purposes of ruling on a
> motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## IV. ANALYSIS

Plaintiff's complaint alleges that Defendant was negligent in providing broken or

defective equipment—the stirrup—to Plaintiff, which directly resulted in his injury. (Doc. 1, ¶

6

20). Defendant puts forth two arguments that it maintains are separate and independent grounds for summary judgment. First, Defendant argues that the agreement that Plaintiff signed prior to the horseback ride insulates Defendant from liability under these facts. (Doc. 20 at 9). Second, Defendant argues that, pursuant to 4 P.S. §§ 601-606 (hereinafter "Equine Activities Immunity Act," "EAIA," or "the Act"), Happy Trails is immune from liability as a provider of equine activities. (*Id.*).

## A. Exculpatory Agreement

An exculpatory clause is valid if (1) the clause does "not contravene public policy"; (2) the contract is "between persons relating entirely to their own private affairs"; and (3) each party is "a free bargaining agent to the agreement so that the contract is not one of adhesion." *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174, 1189 (Pa. 2010) (quoting *Topp Copy Prods., Inc. v. Singletary*, 626 A.2d 98, 99 (Pa. 1993)). However, a valid exculpatory clause will nevertheless be unenforceable "unless the language of the parties is clear that a person is being relieved of liability for his own acts of negligence." *Id.* (quoting *Topp Copy Prods.*, 626 A.2d at 99). Contracts immunizing a party against liability for negligence are not favored by law and therefore established standards must be "met before an exculpatory provision will be interpreted and construed to relieve a person of liability for his own or his servants' acts of negligence." *Dilks v. Flohr Chevrolet, Inc.*, 192 A.2d 682, 687 (Pa. 1963). Thus, Pennsylvania courts have established several standards governing the enforceability of exculpatory clauses:

> 1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing immunity is upon the party invoking protection under the clause.

*Tayar v. Camelback Ski Corp.*, 47 A.3d 1190, 1196 (Pa. 2012) (quoting *Topp Copy Prods.*, 626 A.2d at 99). Further, exculpatory clauses may not immunize a party for intentional or reckless behavior. *Id.* at 1202-03.

Defendant contends that the agreement Plaintiff signed is valid, enforceable, and encompasses broken equipment. (Doc. 20 at 13-16). Therefore, Defendant argues, Plaintiff's negligence claim is barred and Happy Trails is entitled to summary judgment. (*Id.* at 16).

Plaintiff does not appear to argue that the agreement is not valid on its face. Nor should he, considering that the agreement easily satisfies the validity requirements under *Chepkevich*. First, the agreement does not violate any public policy of Pennsylvania. In light of the Equine Activities Immunity Act—discussed in the next section—and similar statutes addressing other recreational activities, it is the policy of the state to encourage participation in those activities, despite their inherent danger, and assign the risk of loss to those who choose to participate in them. *Cf. Chepkevich*, 2 A.3d at 1191 (finding that, in light of a statute that preserves the assumption of risk defense in the context of downhill skiing, it is "the clear policy of this Commonwealth . . . to encourage the sport and to place

8

the risks of skiing squarely on the skier."). Further, Pennsylvania courts have held as valid similar exculpatory agreements in the context of a variety of other inherently dangerous recreational activities. *See, e.g., id.* (downhill skiing); *Wang v. Whitetail Mountain Resort,* 933 A.2d 110, 113-14 (Pa. Super. Ct. 2007) (snow tubing); *Valeo v. Pocono Int'l Raceway, Inc.,* 500 A.2d 492, 492-93 (Pa. Super. Ct. 1985) (auto racing); *Nissley v. Candytown Motorcycle Club, Inc.,* 913 A.2d 887, 889-91(Pa. Super. Ct. 2006) (motorcycle riding).

Second, the agreement was between two private parties, Happy Trails and Mr. Melendez, concerning the purely private matter of renting a horse for recreational purposes. Finally, this is not a contract of adhesion. *See Chepkevich,* 2 A.3d at 1190-91 ("The signer is under no compulsion, economic or otherwise, to participate, much less to sign the exculpatory agreement, because it does not relate to essential services, but merely governs a voluntary recreational activity."). Thus, the agreement is facially valid.

Turning to enforceability, Plaintiff contends that Defendant has failed to meet its burden to show either that defective equipment is an inherent risk of horseback riding, or that the language of the agreement shows that Plaintiff expressly assumed the risk of defective equipment. (Doc. 22 at 11). Plaintiff points out that the agreement does not enumerate defective equipment as a risk. (*Id.*). Further, Plaintiff argues that a broken stirrup is not an inherent risk of horseback riding as demonstrated by the testimony of both Happy Trails' owner and a Happy Trails' employee who both stated they had never seen a stirrup break before. (*Id.* at 12-13). Thus, Plaintiff argues, because the risk was not

foreseeable and was not expressly in the agreement, Plaintiff could not appreciate the risk and could therefore not assume it. (*Id.* at 13).

Plaintiff's argument essentially states that the second element from *Tayar*—that "the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties"—is not met in this case because the agreement did not specifically enumerate the risk of defective equipment. Pennsylvania courts, however, have rejected this argument before. *See Chepkevich*, 2 A.3d at 1193-94.

In *Chepkevich*, a skier, Lori Chepkevich, sued a ski resort after she fell from a ski lift and was injured. *Id.* at 1175-76. She claimed her injury occurred because an employee promised to stop the ski lift briefly to allow Chepkevich to help a child board the lift and then the employee failed to do so. *Id.* Prior to the accident, Chepkevich had signed a document titled "RELEASE FROM LIABILITY" which stated, in pertinent part,

> Skiing, Snowboarding, and Snowblading, including the use of lifts, is a dangerous sport with inherent and other risks which include but are not limited to [certain enumerated risks]. . . . I agree to accept all these risks and agree not to sue Hidden Valley Resort or their employees if injured while using their facilities regardless of any negligence on their part.

*Id.* at 1176. The Pennsylvania Supreme Court first rejected Chepkevich's argument that she did not assume the specific risk that caused her injury and instead found that a fall from a ski lift was an inherent risk in the sport of skiing. *Id.* at 1188. Therefore, the Court found that the suit was barred by the Skier's Responsibility Act, 42 PA. CONS. STAT. ANN. §

7102(c), which preserves the common law assumption of the risk defense in the context of downhill skiing. *Chepkevich*, 2 A.3d at 1187-88.

Turning to an alternative ground for summary judgment—the release—the *Chepkevich* Court held that the term "negligence" did not require any definition or illustration to be given effect. *Id.* at 1193. Indeed, reversing the court below on that point, the Court found "no reason to require the drafters of exculpatory releases to provide definitions and context for commonly used terms such as 'negligence.'" *Id.* The Court then found that the plain language of the release encompassed Chepkevich's claim for negligence and therefore barred the claim. *Id.* at 1194-95. Because the Court had already found that the risk involved was inherent, the Court found it unnecessary to address the merits of Chepkevich's final argument "that the Release exempted Hidden Valley from liability only when its negligence gave rise to a risk otherwise inherent to the sport of skiing." *Id.* at 1193-94.

Concerning the case at hand, while this Court agrees with Plaintiff that the provision of defective equipment is not an inherent risk in the sport of horseback riding, this point is not dispositive. As one Pennsylvania court explained, "the assumption of the risk doctrine bars a plaintiff from recovering in tort for risks inherent to a certain activity. In contrast, the explicit, broad, and valid language of the exculpatory clause bars all claims, regardless of whether they arise from an inherent risk." *Nissley*, 913 A.2d at 892 (footnote and internal citations omitted). Thus, as long as the language of the exculpatory agreement applies, any

inherent risk analysis is superfluous. The fact that the court in *Chepkevich* found it unnecessary to its holding to address the plaintiff's argument that non-inherent risks cannot be released in exculpatory agreements does not affect this analysis. As that court saw no need to overturn the language in *Nissley*, this Court sees no reason not to follow it.

As for enforceability of the agreement, in the realm of recreational activities, Pennsylvania has upheld expansive language in exculpatory agreements. *See, e.g., Nissley,* 913 A.2d at 890-91 (upholding motor cycle club's exculpatory agreement in a negligence action when the release stated that plaintiff "hereby give[s] up all my rights to sue or make claim"); *Zimmer v. Mitchell & Ness,* 385 A.2d 437, 440 (Pa. Super. Ct. 1978), *aff'd per curiam,* 416 A.2d 1010 (1980) (upholding ski rental shop's exculpatory agreement in a negligence action when the release stated that skier released defendant from "any liability"); *Valeo,* 500 A.2d at 492-93 (upholding race track's exculpatory agreement in a negligence action where race car driver signed an agreement releasing "defendants 'from all liability . . . for all loss or damage'").

Here, Plaintiff signed an agreement that he knew to be a waiver. (Doc. 20-2 at 51-53; Doc. 20-7). Paragraph two of the agreement stated that Plaintiff released Happy Trails "from any and all claims, demands, or cause of action that I . . . may hereafter have for injuries and/or damages arising out of my participation in Happy Trails activities, including but not limited to, loses caused by negligence." Further, paragraph six states that Plaintiff "hereby expressly recognize[s] that this Agreement and Release of Liability is a contract

pursuant to which I have released any and all claims against the Released Parties resulting

from my participation in Happy Trails activities including any claims caused by negligence."

Plaintiff has alleged that Defendant was negligent in providing him defective equipment

during his trail ride. The plain language of the agreement signed by Plaintiff releases

Defendant from "all claims" including those "caused by negligence." Thus, Plaintiff's claim,

in as much as it is alleging that Defendant acted negligently, is encompassed by the

exculpatory language of the agreement and therefore barred.[2]

Plaintiff advances a more narrow reading of the agreement and argues that because

the agreement does not enumerate defective equipment as a risk, he did not expressly

assume it. The *Chepkevich* Court, however, was clear that no illustrations or examples are

required to give common terms effect in an exculpatory agreement. *See Chepkevich*, 2

A.3d at 1193. "All claims" and "negligence" are commonly used terms and Pennsylvania

---

[2] This Court notes that there is some language in *Chepkevich* that seems to support Plaintiff's argument. As an aside, the *Chepkevich* Court states that "the risk [in this case] was not so unexpected, or brought about in so strange a manner, as to justify placing this injury beyond the reach of the plain language of the Release." *Chepkevich*, 2 A.3d at 1194. Plaintiff has pointed out that a broken stirrup is a very uncommon, and therefore unexpected, occurrence. (Doc. 22 at 12-13). Nevertheless, because *Chepkevich* does not give any standards for what type of risks fall beyond the realm of the plain language of an exculpatory agreement, this Court must turn to other cases. This Court finds *Zimmer v. Mitchell and Ness* instructive.

In *Zimmer*, a skier, Joseph Zimmer, sued a ski rental company after the bindings on the skis he rented failed to release as they were supposed to during a fall, causing him substantial injury. *Zimmer*, 385 A.2d at 438. Zimmer argued that the rental company was negligent in renting him skis without testing and fitting the bindings. *Id.* at 440. The court granted the ski rental company's motion for summary judgment based on an exculpatory agreement that Zimmer signed when he rented the skis that released the rental company "from any liability for damage and injury to myself or to any person or property resulting from the use of this equipment." *Id.*

Thus, while the specific issue of a broken stirrup may be very uncommon, Pennsylvania courts have enforced exculpatory agreements in the case of a released party negligently providing the releasing party with defective or broken equipment.

law does not require drafters of exculpatory clauses to enumerate every possible contingency that is included in broader language they choose to use. Plaintiff agreed to release Defendant from "all claims" including those that arose from Defendant's negligence. Plaintiff cannot now protest that he did not know what "all claims" included.[3]

Plaintiff finally argues that Defendant's conduct amounts to recklessness and exculpatory agreements cannot immunize reckless conduct. (Doc. 22 at 14); *see Tayar*, 47 A.3d at 1202-03. Defendant concedes that the agreement only releases it from suits for negligence, not recklessness, and counters that its "conduct at most amounts to ordinary negligence." (Doc. 23 at 10). "Recklessness is distinguishable from negligence on the basis that recklessness requires conscious action or inaction which creates a substantial risk of harm to others, whereas negligence suggests unconscious inadvertence." *Tayar*, 47 A.3d at 1200.

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of

---

[3] At oral argument, Plaintiff advanced a slightly different argument. Plaintiff argued, in effect, that because paragraph one of the agreement enumerates risks associated with horseback riding, the rest of the agreement is limited to those enumerated lists. This argument was also advanced in *Chepkevich. See Chepkevich*, 2 A.3d at 1194. There, the court rejected the plaintiff's argument that "by enumerating risks inherent to downhill skiing and then requiring the skier to accept those risks, the Release only bars suits that arise out of the listed risks." *Id.* The court found that the release, which stated that skiing "is a dangerous sport with inherent and other risks," was not limited to the enumerated the risks, but clearly included "other risks." Here, as in *Chepkevich*, Plaintiff's argument fails on textual grounds. It is true that the agreement, in paragraph one, lists some risks inherent to horseback riding. However, in paragraph two and six, the agreement states that Plaintiff relinquishes "any and all claims." There is no limiting language in paragraph two or six that would indicate that Plaintiff was only relinquishing claims arising out of the enumerated risks in paragraph one.

physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Id.* at 1200-01 (quoting RESTATEMENT (SECOND) OF TORTS § 500).

Defendant's bare assertion that its actions do not rise to the level of recklessness does not satisfy its burden to show that there is no genuine dispute as to a material fact. The record shows that Happy Trails provided a saddle for Plaintiff's ride, that a stirrup on that saddle broke during the ride, and that Plaintiff fell from a horse when the stirrup broke. (Doc. 22-5 at 35-36, 39-40). It was the responsibility of Happy Trails, not the customer, to inspect the equipment, but no records of inspections or repairs were kept, nor was the Happy Trails' owner able to say if any inspection of the specific stirrup occurred on the day of the accident. (*Id.* at 13, 53-55, 58, 60). Happy Trails' owner testified that he bought used saddles on the internet and also from individuals who walk into his business. (*Id.* at 18). He was unable to say where he procured the saddle in question, how long he had had it, or how old it was. (*Id.* at 18-19, 58, 60). Additionally, Happy Trails' owner displayed a somewhat cavalier attitude towards safety, asserting that customers assume all risks associated with the activity, including equipment breaking, staff failing to put equipment on the horses correctly, and even staff failing to provide basic equipment like stirrups or a bridal. (*Id.* at 32-33). Viewing the record in a light most favorable to Plaintiff, a question of fact therefore remains as to whether Defendant's action rose to the level of recklessness.

Defendant goes on to argue that Plaintiff failed to plead recklessness and that if "recklessness is the standard to apply in this case, plaintiff's compliant must be dismissed

15

with prejudice." (Doc. 23 at 10). This argument, however, runs counter to the holding in

*Archibald v. Kemble*, 971 A.2d 513 (Pa. Super. Ct. 2009).

*Archibald* involved a lawsuit stemming from Robert Archibald's participation in a "no-

check" adult hockey league. *Id.* at 515. In his complaint, Archibald alleged that another

player, Cody Kemble, checked him into the boards of the ice hockey rink. *Id.* The

complaint went on to say that

> Cody Kemble's negligence consisted of the following:
> a. failing to assure that Robert Archibald was aware and/or warned that the
> check was going to be attempted before checking him into the boards;
> b. failing to assure that Robert Archibald was willing to be checked;
> c. checking Robert Archibald when not safe to do so;
> d. failing to understand and learn the rules, prohibition and limitation on any
> checking prior to participating in the non-checking league and game.

*Id.* at 516. First determining that Archibald would only be able to recover if he showed that

Kemble acted recklessly, the Court went on to hold that recklessness "may be averred

generally." *Id.* at 517, 519. Thus, "merely determining the degree of care is recklessness

does not give rise to a separate tort that must have been pled within the applicable statute

of limitations." *Id.* at 519. Instead, "Archibalds' cause of action was . . . subsumed within

the negligence count pled in their Complaint." *Id.*; *see also M.U. v. Downingtown High Sch.*

*E.*, 103 F. Supp. 3d 612, 629 (E.D. Pa. 2015) (construing a separately pleaded

recklessness claim "simply as a mechanism to recover punitive damages under [the]

negligence claim" because "[t]here is no cause of action for recklessness under

Pennsylvania law" and "recklessness is a heightened standard of care required to potentially recover punitive damages").

Consequently, under *Archibald*, the fact that Plaintiff did not specifically plead recklessness in his Complaint is not fatal to his claim. In his Complaint, Plaintiff alleged that, among other things, Defendant "provid[ed] equipment or tack that defendant knew or should have known was faulty." This statement encompasses the allegation that Defendant recklessly provided Plaintiff with defective or faulty equipment. The fact that Plaintiff's Complaint does not contain the word "reckless" is immaterial.

In sum, because the agreement that Plaintiff signed is only enforceable to immunize Defendant for its negligence, and not for its recklessness, and because there is a genuine dispute as to the material fact of whether Defendant acted recklessly in this case, the Court finds that the agreement is not a sufficient basis for summary judgment.

## B. Equine Activities Immunity Act

Defendant next points to the Equine Activities Immunity Act, 4 P.S. §§ 601-606, as an alternative, independent basis for summary judgment. The EAIA limits the liability of certain providers of equine activities if specific requirements are met. Defendant argues that, as a provider of a qualifying equine activity who has complied with the EAIA's statutory requirements, it is entitled to immunity from suit. (Doc. 20 at 10-11). Plaintiff counters that Defendant's negligent provision of defective or faulty equipment puts the suit outside of the EAIA's protections. (Doc. 22 at 4).

The issue of whether a covered entity is immunized from liability under the EAIA for providing defective or faulty equipment is a question of first impression. As such, this Court must engage in statutory interpretation. For this Court to interpret state law, it "must determine how the highest court of the State would decide an issue." *Baker ex rel. Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 249, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998). Pennsylvania interprets statutes according to the Statutory Construction Act of 1972, 1 PA. CONS. STAT. ANN. §§ 1501-1991. "When interpreting statutory language, the Pennsylvania Supreme Court is guided by the 'plain meaning' rule of construction." *Hofkin v. Provident Life & Accident Ins. Co.*, 81 F.3d 365, 371 (3d Cir. 1996) (citing *Commonwealth v. Stanley*, 446 A.2d 583, 587 (Pa. 1982)). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 PA. CONS. STAT. ANN. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* at § 1921(b).

The EAIA provides immunity for "an individual, group, club or business entity that sponsors, organizes, conducts or provides the facilities for an equine activity" including "[r]ecreational rides or drives which involve riding or other activity involving the use of an equine." 4 P.S. §§ 601, 602(b)(6). The EAIA, however, only provides immunity where signs of at least a certain size are "conspicuously posted on the premises . . . in two or more locations, which states the following: You assume the risk of equine activities pursuant to

18

Pennsylvania law." *Id.* at § 603. For covered entities in compliance with the signs requirement, "liability for negligence shall only be barred where the doctrine of knowing voluntary assumption of risk is proven with respect to damages due to injuries or death to an adult participant resulting from equine activities." *Id.* at § 602(a). Finally, the Act is clear that "[t]he immunity provided for by this act shall be narrowly construed." *Id.* at § 606.

Plaintiff does not argue that Defendant, as a provider of recreational horseback riding activities, is not a covered entity under the statute. Additionally, Plaintiff does not argue that Defendant did not have the appropriate signs as prescribed under the EAIA. Plaintiff's sole argument is that the Act does not bar actions for the negligent provision of faulty or defective equipment. (Doc. 22 at 6). Stated otherwise, Plaintiff argues that because he did not know he might be given defective or faulty equipment, he could not knowingly assume the risk of such. Defendant counters that "[o]nce plaintiff entered the stables property and took part in recreational horse riding, he assumed the risk of harm associated with such activities." (Doc. 20 at 11).

The EAIA states that "liability for negligence shall only be barred where the doctrine of knowing voluntary assumption of risk is proven." 4 P.S. § 602(a). The Act, therefore, appears to preserve the common law assumption of risk doctrine in the context of equine activities. In delineating the contours of this doctrine, the Pennsylvania Supreme Court has looked to the Restatement Second of Torts. *See Hughes v. Seven Springs Farm, Inc.,* 762 A.2d 339, 341-42 (Pa. 2000). The Restatement outlines four varieties of the doctrine, the

19

first two of which are of interest in this case. *See* RESTATEMENT (SECOND) OF TORTS § 496A cmt. c. The first, express assumption of risk occurs when "the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection, and agrees to take his chances as to injury from a known or *possible risk*." *Id.* (emphasis added). This is the type of assumption of risk examined above in respect to the agreement signed by Plaintiff. The second, implied assumption of risk, occurs when "the plaintiff has entered voluntarily into some relation with the defendant which *he knows to involve the risk*, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances." *Id.* (emphasis added).

It is self-evident that a person "cannot be found to have implicitly assumed a risk of which he had no knowledge." *Rutter v. Ne. Beaver Cty. Sch. Dist.*, 437 A.2d 1198, 1204 (Pa. 1981) (plurality opinion). As such, "the defense of assumption of the risk requires that the defendant show that the plaintiff was 'subjectively aware of the facts which created the danger and . . . must have appreciated the danger itself and the nature, character and extent which made it unreasonable.'" *Berman v. Radnor Rolls, Inc.*, 542 A.2d 525, 532 (Pa. Super. Ct. 1988) (alteration in original) (quoting *Crance v. Sohanic*, 496 A.2d 1230, 1232 (Pa. Super. Ct. 1985)); *See also* RESTATEMENT (SECOND) OF TORTS § 496D.[4] Thus, for a

---

[4] Of course, a plaintiff's own assertion about whether he knew of and understood the risk is not conclusive.

There are some risks as to which no adult will be believed if he says that he did not know or understand them. Thus an adult who knowingly comes in contact with a fire will not be believed if he says that he was unaware of the risk that he might be burned by it; and the

20

defendant to prevail on a summary judgment motion based on the assumption of risk defense, it must be "beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition." *Barrett v. Fredavid Builders, Inc.*, 685 A.2d 129, 131 (Pa. Super. Ct. 1996) (citing *Struble v. Valley Forge Military Acad.*, 665 A.2d 4 (Pa. Super. Ct. 1995)). Finally, "[t]he mere fact one engages in activity that has some inherent danger does not mean that one cannot recover from a negligent party when injury is subsequently sustained." *Bullman v. Giuntoli*, 761 A.2d 566, 572 (Pa. Super. Ct. 2000).

In short, to preclude Plaintiff's negligence action under the EAIA, Defendant must show that Plaintiff knew that the equipment he was provided with might break and voluntarily continued with the horseback ride in spite of that knowledge. Only then can Plaintiff be said to knowingly assume the risk. Defendant, however, has made no such showing. Defendant has failed to point to anything in the record to show that Plaintiff decided to use the equipment with the knowledge that the stirrup or any other equipment Plaintiff was provided with might break. Nor is this a case where the risk is so obvious that the knowledge could be inferred. The owner of Happy Trails testified that, in the approximately ten years he operated the stable, he never remembered a single stirrup breaking. (Doc. 20-3 at 20-21). Given that it is not a common occurrence, it strains

---

same is true of such risks as those of drowning in water or falling from a height, in the absence of any special circumstances which may conceal or appear to minimize the danger.

RESTATEMENT (SECOND) OF TORTS §496D cmt. d.

credibility to argue that a recreational participant would know that being provided broken equipment was likely.

Therefore, because there has been no showing that Plaintiff knew of the risk and voluntarily disregarded it, the EAIA provides no relief for Defendant.[5]

## V. CONCLUSION

For the reasons stated above, the Court will deny Defendant's Motion for Summary Judgment (Doc. 19).  A separate Order follows.

Robert D. Mariani
United States District Judge

---

[5] At oral argument, counsel for the Defendant conceded that, even under the broad interpretation of the Act that Defendant argued for, the Act would not immunize a covered entity for acts of recklessness or gross negligence.  As this Court has already found that there is a genuine dispute as to the material fact of whether the Defendant acted recklessly, this provides an alternative ground for the finding that the Act does not provide immunity under these facts.